I .WILLIAM H. BYRNES, III, Chief Judge.
In this writ application, the defendant, General Motors Corporation (“GMC”), requests a review of the trial court’s judgment denying its motion for summary judgment. We reverse and remand.

Facts

Around 10:40 a.m. on December 31, 1991, the plaintiff, New Orleans Police Officer Leo J. Bourgeois, caught and detained a suspect near a building in the 1900 block of Murl Street in Algiers.
In her deposition, Officer Leontine Mullins stated that she drove her patrol car down Murl Street at about 35 miles per hour when she attempted to stop to assist Officer Bourgeois. She related that she applied the brakes but the car proceeded through a puddle of water, over the curb, and over grass. The police report shows that Officer Mullins’ vehicle slid into a tree stump or small bush and bumped Officer Bourgeois into the wall. Officer Mullins could not stop the vehicle before it hit Officer Bourgeois.
^Officer John Richardson’s deposition shows that he has been qualified in Orleans Civil District Court as an expert in the field of automobile repair and in particular, as an expert in brake repairs. Officer Richardson stated that he inspected the vehicle on January 15, 1992 after the accident occurred on December 31, 1991. The vehicle had continued to be driven by the police during those two weeks. Officer Richardson was not aware of any problems during that two-week period.
Officer Richardson testified that the an-tilock brake system (“ABS”), Borche Two system, on the 1991 Caprice, was not functioning properly. Noting that the antilock braking system would have prevented skid marks, he related that he drove the vehicle several times and noted skid marks, indicating that the ABS was not working properly. He found that the electrical components were in normal working condition. Two of the rear tires were worn. All the tires were below the normal pressure. Officer Richardson stated that the left front wheel rotor had scar marks on the inboard side from the brake pad rivets. The inboard brake pad was worn down to the rivets. The officer found that the worn tire and low air pressure combined with a sticking caliper caused the ABS not to function properly.
Officer Richardson explained that the brake pads in a New Orleans Police Department (“NOPD”) vehicle had a “short life.” One vehicle differed from another. Generally three different people drove a police car during a 24 hour day. The brake pads could wear out in three weeks or even in eight hours.
laThe officer testified that the ABS light would go on when the shoe was not grabbing correctly. When Officer Richardson drove the vehicle during the test drives, he said that: “the light never stayed on to alarm the driver that the vehicle had a brake problem.” The driver, Officer Leontine Mullins stated in her deposition that the sensor light never went on.
The vehicle was sent to Garrard Chevrolet for repairs. Officer Richardson noted from the invoice that Garrard replaced the front pads, resurfaced both rotors, and repacked the wheel bearings. With the indication “bleed brake system,” Garrard entered a monetary charge. Garrard re *964 placed the rear wheel cylinders, and corrected the air pressure in the tires. Officer Garrard testified that the invoice did not indicate that any work was done to the caliper on the left front wheel. The vehicle was returned to service.
In the Supervisor’s report of the accident investigation performed on the scene on December 31, 1991, under the heading “UNSAFE CONDITION” (Describe unsafe conditions such as faulty brakes, lights, icy road, etc. contributing to accident), Officer Burke provided: “According to the officer’s account, she applied brakes, but the vehicle did not stop. The condition of the grass was damp to wet. There were holes that may have caused the anti-lock brake system to fail.”
In her deposition, Officer Mullins testified that at the time of the accident, the streets were not wet. She stated that there was no mud hole or pothole. She agreed that there was water on the roadway right alongside the curb where it met the street.
Un his affidavit, included in his statements, the plaintiff declared: “That the street pavement was dry that morning; ... That the grass around him was dry that morning; ... That there was not numerous puddles on the fringes of the streets near the accident scene;” and “That he did not observe any mudhole or pothole on or around the accident scene.”
Officer Bourgeois filed a petition against Garrard Chevrolet and GMC. After a hearing, the trial court denied the defendant’s, GMC’s, motion for summary judgment, and GMC filed its writ application, requesting a review of that ruling.

Swmmwnj Judgment

La. C.C.P. art. 966 provides in part:
A.(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B.... The judgment sought should be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is not genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C.(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
IsLa. C.C.P. art. 967 provides in part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on *965 the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
Appellate courts review a summary judgment de novo, using the same criteria applied by the trial courts to determine whether the summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 c/w 99-2257, (La.2/29/00), 755 So.2d 226, 230. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. Two Feathers Enterprises v. First National Bank, 98-0465 (La.App. 4 Cir. 10/14/98), 720 So.2d 398, 400. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2). A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. However, if the movant will not bear the burden of proof at trial |fion the matter that is before the court, the movant’s burden does not require him to negate all essential elements of the adverse party’s claim. Rather, he need only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim. La. C.C.P. art. 966 C(2).

Products Liability

In his petition, the plaintiff, Leo J. Bourgeois, makes a products liability claim against GMC under La. R.S. 9:2800.51 et seq. The plaintiff contends that GMC’s product was unreasonably dangerous. The plaintiff must show that the product is unreasonably dangerous in: (1) construction or composition[1] or (2) in design.[2] The plaintiff must show that the product may be unreasonably dangerous if: (3) the manufacturer did not provide adequate warning;[3] or (4) the product did not conform to the manufacturer’s express warranty.[4] The product’s characteristic that renders it unreasonably dangerous under La. R.S. 9:2800.55 must exist at the time that the product left the control of its manufacturer, or result from a reasonably anticipated alteration or modification of the product. Ashley v. General Motors, 27,851 (La.App. 2 Cir. 1/24/96), 666 So.2d 1320; Cowart v. Avondale Industries, 2000-0894 (La.App. 4 Cir. 7/3/01), 792 So.2d 73; Simon v. American Crescent Elevator Company, 99-2058 (La.App. 4 Cir. 4/26/00), 767 So.2d 64.
The plaintiff, Leo Bourgeois, maintains that there is a genuine issue of material fact as to whether the General Motors 1991 Chevrolet Caprice brake 17system on December 31, 1991 was unreasonably dangerous because of the construction or composition of the brake system. The plaintiff argues that at 30 miles per hour the GMC brake system specification or standard is that the car must stop within 57 feet. Officer Mullins testified that she was traveling about 35 miles per hour prior to attempting to stop. According to the plaintiffs affidavit, he measured the distance between where Officer Mullins testified that she started to stop and where he was hit. The distance was a little more than 60 feet. The plaintiff asserts that the 1991 Chevrolet Caprice brake system materially deviated from General Motor’s *966 specifications and standards because it did not stop the car within 57 feet.
Expert opinion testimony in the form of an affidavit or deposition may be considered in support of or in opposition to a motion for summary judgment. Independent Fire Ins. Co. v. Sunbeam Corp., 755 So.2d at 235. In the present case, GMC presented an affidavit of its expert witness, David Buist, who declared that under the circumstances of the accident, there is no evidence that the braking system deviated in a material way from the manufacturing or design specifications of GMC or that the design of the GMC braking system caused or contributed to the accident.
In Ashley v. General Motors Corp., supra, the Second Circuit held that the evidence did not show that the accelerator system was defective in construction, composition, or design, despite the existence of a cruise-control warning bulletin and the mechanic’s testimony that the vehicle’s throttle was open beyond the normal idling position after the accident.
|«In Batiste v. General Motors Corp., 2000-2027 (La.App. 4 Cir. 5/23/01), 802 So.2d 686, this court held that the doctrine of res ipsa loquitur was inapplicable, and the motorist was required to present expert testimony to create a genuine issue of material fact after the manufacturer introduced expert testimony that the properly functioning airbag would not have deployed because of the manner in which the motorist’s vehicle made impact. This court referred to Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/27/94), 643 So.2d 1228, 1233, where the Louisiana Supreme Court stated:
The jurisprudence has also recognized that there are situations in which expert testimony is not necessary. Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in , a patient’s body, from which a lay person can infer negligence.
In the present case, plaintiff cannot rely on the doctrine of res ipsa loquitur to show there was a defect in the design of the ABS system. The failure of the vehicle’s brakes does not prove that the design of the ABS system was defective just because the brakes did not work. The police mechanic, Officer Richardson, explained that the brake pads in a NOPD vehicle had a “short life.” The skid marks, worn brake pad, the two worn rear tires, and the inadequate air pressure in the tires indicated to Officer Richardson that the brakes were not working properly. However, Officer Richardson did not comment on a defect in the design of the ABS brakes. The officer agreed that he was not in a position to comment on whether something he saw deviated from^the manufacturer’s specifications, and he did not plan on reviewing the specifications in the future. He agreed that he was |9not in a position to determine that the braking system that existed on the day of the accident deviated in some material way from GMC’s performance standards.
There is no showing that the wear and tear on the brake system was not normal but was caused by a defective design of the ABS system. The plaintiffs affidavit stated that he measured the distance between where Officer Mullins testified that she started to stop and where he was hit. The plaintiff declared that the distance was a little more than 60 feet, whereas at 30 miles per hour the GMC brake system specification or standard is that the car must stop within 57 feet. Without expert testimony concerning GMC specifications and standards, the plaintiffs testimony is inadequate. The plaintiff is required to *967 present expert testimony to show a genuine issue of material fact. Without expert testimony, the plaintiff cannot carry his burden of proof that the ABS braking system was defective in design or that an alternative design would have prevented the plaintiffs injuries.
Accordingly, upon granting GMC’s writ application, we reverse the ruling of the trial court, and grant GMC’s motion for summary judgment. The case is remanded for further proceedings.

WRIT GRANTED: REVERSED & REMANDED.

. La. R.S. 9:2800.55.

. La. R.S. 9:2800.56.

. La. R.S. 9:2800.57.

. La. R.S. 9:2800.58.