United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 9, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-31212
Summary Calendar

_____

RAIFORD WINSTEAD,

Plaintiff - Appellant

versus

GEORGIA GULF CORPORATION; HYDROCHEM INDUSTRIAL SERVICES, INC.;
HYDROCHEM, INC.; MASTER MAINTENANCE CORPORATION, also known as
Master Management Corporation; PAYNE & KELLER COMPANY, INC.

Defendants - Appellees

_____

No. 03-30183
Summary Calendar

_____

JERRY A. OLDHAM, ET AL.

Plaintiffs

RAIFORD WINSTEAD

Plaintiff - Appellant

versus

LOUISIANA INTRASTATE GAS CO. LLC; ET AL.

Defendants

AMOCO PRODUCTION CO.; AMOCO PIPELINE CO.;
AMOCO ENERGY TRADING CORP.

Defendants - Appellees

_____

Appeals from the United States District Court
for the Middle District of Louisiana

Before HIGGINBOTHAM, DAVIS and PRADO, Circuit Judges.[1]

PRADO, Circuit Judge.

The above numbered and styled appeals arose from two lawsuits filed after an accidental release of chemicals at a Georgia Gulf Corporation plant in Iberville Parish in Louisiana on September 25, 1996. Jerry A. Oldham, a plant employee, filed the first lawsuit (the *Oldham* lawsuit) in state court on September 10, 1997. Oldham named Appellee Amoco Production Company, Appellee Amoco Pipeline Company, Appellee Amoco Energy Trading Corporation (collectively, Amoco), Louisiana Intrastate Gas Company, L.L.C., L.I.G. Liquids Company, L.L.C., and Louisiana Interstate Gas Corporation (collectively, LIG) as defendants. Oldham subsequently amended his complaint and added Appellant Raiford Winstead and four other plant employees as plaintiffs and named Equitable Resources, Inc., and LIG's insurance carrier, Associated Electric and Gas Insurance Services, LTD as defendants. The defendants removed the case to federal court on March 29, 1999.

A few weeks after removal, Amoco filed a third-party complaint against Appellee Georgia Gulf Corporation (Georgia

_____

[1]Pursuant to 5th Cir. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

Gulf) seeking contractual indemnity. Although Winstead did not amend his complaint to add Georgia Gulf as a defendant at that time, he sought to amend his complaint to add Georgia Gulf and three of its maintenance contractors–Appellee Master Maintenance Corporation, Appellee HydroChem Industrial Services, Inc., and Appellee Payne & Keller Company, Inc. (collectively, the Georgia Gulf defendants)–as defendants on January 12, 2001. The district court denied Winstead's motion to amend his complaint.

After the district court denied his motion to amend the complaint, Winstead filed a second lawsuit (the *Winstead* lawsuit) based on the same accident in state court on May 15, 2002 and sued the Georgia Gulf defendants. The Georgia Gulf defendants removed the case to federal court. On September 16, 2002, the district court granted the Georgia Gulf defendants' motion for summary judgment based on prescription and dismissed Winstead's claims. That action is the subject of Winstead's first appeal.

Winstead settled his claims against the LIG defendants and AEGIS in the first lawsuit The district court then dismissed Winstead's claims against the Amoco defendants on summary judgment because Winstead failed to present evidence of causation. That action is the subject of Winstead's second appeal.

**Whether Winstead Should Have Been Permitted to Amend**

In his first issue, Winstead contends the district court

3

erred by denying his motion to amend his complaint in the *Oldham* lawsuit. Winstead maintains that denying his motion to amend punished him for delays he did not create and for his exclusion from a settlement involving other plaintiffs.

Rule 15(a) of the Federal Rules of Civil Procedure mandates that leave to amend "be freely given when justice so requires." Determining when justice requires permission to amend rests within the discretion of the trial court. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Nilsen v. City of Moss Point, Miss.*, 621 F.2d 117, 122 (5th Cir. 1980). Consequently, this Court will not disturb the district court's denial of a motion to amend absent an abuse of discretion. *See Nilsen v. City of Moss Point, Miss.*, 621 F.2d at 122. In exercising its discretion in considering a motion to amend a complaint, the district court may consider, among other factors, undue delay, dilatory motive on the part of the movant, and undue prejudice to the opposing party by virtue of allowing the amendment. *See Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1024 (5th Cir. 981). After reviewing the district court's application of those factors to Winstead's proposed amendment, the Court concludes that the district court did not abuse its discretion.

<u>Undue delay and dilatory motive</u>. Although Winstead insists he attempted to amend his complaint only once, Winstead was added

as a plaintiff in the *Oldham* lawsuit on September 24, 1997. After Winstead joined the lawsuit, the *Oldham* plaintiffs amended their complaint on October 3, 1997 to add additional class representatives and to clarify the class definition, and on March 6, 1998 to add more class representatives. Although these amendments occurred before the case was removed to federal court, the state court issued an order on March 27, 1998 that established an absolute deadline of July 15, 1998 for adding new parties. Winstead never challenged that deadline, and the deadline remained in full force and effect once the case was removed to federal court. *See* 28 U.S.C. § 1450.

Although Winstead states that he attempted to add the Georgia Gulf defendants when he learned of facts appropriate to amend, Winstead waited 21 months after Amoco filed its third-party complaint to seek his amendment. Initially, Winstead may have been reluctant to sue his employer, but significant time—over forty months–had elapsed when Winstead sought to amend his complaint on January 12, 2001. Although Winstead complains about his first attorney, "[t]he retention of a new attorney able to perceive or draft different or more creative claims from the same set of facts is . . . no excuse for the late filing of an amended complaint." *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1154 (5th Cir. 1981). Not only had undue delay occurred by the time Winstead asked to amend his complaint, waiting to chose

to sue his employer until such a later stage of the litigation was dilatory.

Undue prejudice. Winstead also maintains that the Georgia Gulf defendants would have sustained no prejudice through his amendment because the defendants had been defending earlier allegations in consolidated cases. Winstead's amendment, however, would have forced the Georgia Gulf defendants to attempt to discover the basis for Winstead's claims more than four years after Winstead's alleged exposure to the chemical release. Even if the Georgia Gulf defendants had been defending themselves in related litigation, the Georgia Gulf defendants would have been entitled to discovery of evidence relevant to Winstead's claims. Such discovery would have inevitably delayed the resolution of the *Oldham* lawsuit. A four-year delay would have clearly prejudiced the ability of the Georgia Gulf defendants to defend themselves as relevant witnesses may have no longer been available and memories would have inevitably faded.

In addition to being prejudiced by the passage of time, the Georgia Gulf defendants reasonably relied upon the deadline for adding new parties. As a third-party defendant to Amoco's indemnification claims, the Georgia Gulf defendants had no reason to participate in discovery related to Winstead's claims. Winstead had adequate time to discover evidence about the cause of his injuries and adequate time to amend his complaint. "At

6

some point in time[,] delay on the part of a plaintiff can be procedurally fatal." *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981). That point was surpassed here. Under these circumstances, the district court did not abuse its discretion in denying the proposed amendment.

**Whether the District Erred by Finding No Evidence of Causation**

In his second issue, Winstead argues that the district court erred in granting Amoco's motion for summary judgment in the *Oldham* lawsuit after determining Winstead failed to present evidence of causation in support of his claims of Amoco's liability. Winstead maintains genuine issues material issues of fact exist about Amoco's liability that preclude summary judgment. This Court reviews the district court's grant of a motion for summary judgment de novo. *See Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 477 (5th Cir. 2002).

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this case, Amoco argued that no evidence existed that the natural gas it supplied to Georgia Gulf contained the

7

element alleged to have caused the chemical release that injured Winstead.  To raise a question of fact about this question, Winstead was required to present expert testimony because the cause of the chemical release is beyond the understanding of an untrained lay person and because specialized, technical knowledge would assist the trier of fact in determining the cause of the chemical release.  *See Batiste v. General Motors Corp.*, 802 So.2d 686, 690 (La. Ct. App. 2001); FED. R. EVID. 702.

To meet his burden of presenting evidence of causation, Winstead relied on preliminary expert reports authored by Georgia Gulf's experts and the deposition testimony of Georgia Gulf's corporate representative.  In the reports, Georgia Gulf's experts identified Amoco's natural gas as the most likely source of the reactive nitrogen that formed the tris that caused the chemical release.  Those reports, however, are not competent summary judgment evidence.

Rule 56(e) of the Rules of Civil Procedure provides:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  *Sworn or certified* copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

FED. R. CIV. P. 56(e) (emphasis added).  The Georgia Gulf experts may have been competent to testify about the matters discussed in their expert reports, but the preliminary reports were never

8

sworn or certified. Because the reports were neither sworn nor verified, the reports did not constitute competent summary judgment evidence. Consequently, the reports did not raise a genuine issue of material fact about whether the natural gas Amoco supplied to Georgia Gulf contained the element alleged to have caused the chemical release that injured Winstead, even if supported by the deposition testimony of Georgia Gulf's corporate representative. In contrast, Amoco presented substantial summary judgment evidence that indicated its natural gas did not contain any element that might have contributed to the chemical release. As a result, Amoco was entitled to summary judgment. Consequently, the district court did not err by finding no evidence of causation and granting summary judgment in Amoco's favor.

**Whether Claims Against Georgia Gulf Are Prescribed**

In his third issue, Winstead argues that the district court erred in granting summary judgment in favor of the Georgia Gulf defendants in his second lawsuit, the *Winstead* lawsuit. Winstead maintains the district court erred in applying the law in regard to the applicability of statutory immunity to all named defendants and in determining Winstead's claims were prescribed. While the district court's analysis of Georgia Gulf's immunity is somewhat unclear, it is clear that Winstead's claims are prescribed under Louisiana law.

9

Louisiana law provides for a one-year limitations period for torts such as Winstead's claims. *See* LA. CIV. CODE art. 3492 (delictual actions are subject to a liberative prescription of one year). In his complaint, Winstead complained about acts that occurred in September 1996. Winstead, however, did not file his complaint until May 13, 2002–over five years after September 1996. As a result, the face of Winstead's complaint bars his claims.

When the plaintiff's claims are prescribed on its face, the burden shifts to the plaintiff to prove the prescription period was suspended or prescribed. *See Lima v. Schmidt*, 595 So.2d 624, 628 (La. 1992). Winstead maintains his claims in the *Oldham* lawsuit interrupted prescription in the *Winstead* lawsuit because the Georgia Gulf defendants were joint tort feasors with LIG and Amoco in the Oldham lawsuit. Although article 2324(c) of the Louisiana Civil Code states that "[i]nterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors," Winstead did not establish that the Georgia Gulf defendants were joint tort feasors with any LIG or Amoco.

"If the plaintiff's basis for claiming interruption is solidary liability between two parties, then the plaintiff also bears the burden of proving that solidary relationship." *Vincent v. Tusch*, 618 So.2d 385, 385 (La., 993). Winstead provided no evidence that established that the Georgia Gulf defendants were

10

joint tort feasors with LIG or Amoco.  As a result, Winstead failed to demonstrate that his claims in the *Oldham* lawsuit interrupted prescription in the *Winstead* lawsuit.  Consequently, the district court did not err by determining that Winstead's claims in the Winstead lawsuit were prescribed.

## Conclusion

Winstead maintains in his last issue that the district court erred in the *Winstead* lawsuit by determining the Georgia Gulf defendants were immune from suit.  This Court need not reach that issue, however, because Winstead's claims were prescribed. Having determined that the district court did not err in either the *Oldham* lawsuit or the *Winstead* lawsuit, this Court affirms the judgment of the district courts.

AFFIRMED