DUHÉ, Circuit Judge:
Robert Krummel and his wife, Patricia Krummel, brought an admiralty and maritime claim under Fed.R.Civ.P. 9(h) against Bombardier Corp. and Bombardier, Inc. (“Bombardier”) for damages resulting from Robert Krummel’s injuries while using a Bombardier personal watercraft.[2] They alleged that the watercraft was unreasonably dangerous and Bombardier failed to warn them of these dangers. After a bench trial, the district court held that Bombardier did not defectively design the watercraft; however, Bombardier failed to provide warnings regarding use of the watercraft. The court awarded damages. Bombardier appeals arguing that the district court erred in finding it had a duty to warn. We agree and reverse.
*550 BACKGROUND
The Kruramels in 1994 purchased two 1994 Bombardier Sea-Doo GTX watercraft (“watercraft”). Bombardier, Inc. manufactured the watercraft and Bombardier Corp. distributed it. The watercraft is designed to carry one operator and two passengers. The watercraft’s footwells are approximately five and one-half inches wide and 11 inches high at the area where an operator places his or her feet. These footwells slope and therefore are not as high at the spot where the rear passenger places his or her feet. Prior to the accident, Robert Krummel read all of Bombardier’s instruction manuals and watched a video. None of these materials warned him of the potential for his leg to become trapped when the vehicle tipped over. Bombardier’s promotional material called falling overboard an expected part of the fun.
On August 27, 1994, Robert Krummel operated his watercraft on the Tchefuncte River, a navigable body of water located in St, Tammany Parish, Louisiana. Riding with him were Patricia Krummel, seated behind him, and their daughter, seated in front of him. While Robert Krummel was waiting on the watercraft at an idle speed for his son, using the other watercraft, to catch up, a wake struck the starboard side of the watercraft, causing the Krummels to tip to the port side. As he began to fall, Robert Krummel intentionally buried his left foot into the footwell in an attempt to brace himself and keep from falling off. His wife, who had her arms wrapped around her husband, pulled on him as she fell off. Robert Krummel’s foot remained in the footwell as his body continued to move to the left. His tibia and fibula snapped, and the break occurred at between eight and 11 inches up the leg.
At trial, the court heard from several ■witnesses regarding foot entrapment[3] accidents while riding similar watercraft. Tanya Lester testified regarding two situations where she suffered foot entrapment in a 1994 GTX watercraft. Unlike Robert Krummel, she testified that she did not intentionally bury her foot in the footwell to prevent her fall and her feet were positioned a bit farther back in the footwell than Robert Krummel’s while riding the watercraft. The court found the mechanics of her accidents to be substantially similar to Krummel’s. Roger Ellis also provided information regarding a leg injury suffered in a 1994 GTX watercraft; however, the court did not rely on this testimony in rendering its decision.
The court also heard testimony from plaintiffs expert witness Dr. Dean Jacobson regarding forces required to cause bone fractures. The court did not permit Jacobson to provide expert testimony as to the watercraft’s design or appropriate warnings. The court limited Jacobson’s testimony only to the forces required to break bones. In his testimony, Jacobson said that if the height of the footwell wall were reduced a person’s foot could be released without trapping. A defense expert, Dr. Peter Fuller, testified that a lower footwell height would not necessarily lessen the chance of entrapment. The court determined that this testimony was not credible. The court concluded that based on these two witnesses the height of the footwell was a factor in the propensity for the watercraft to trap a foot.
Both parties called David Price, Bombardier’s company representative, to testify. Bombardier introduced evidence that it sold about 70,000 watercraft with the identical hull design between 1990 and 1995, and it had only received a few complaints. The court determined that Bombardier’s accident record-keeping policies were insufficient, thereby casting doubt on Price’s credibility. Price also testified re *551 garding Bombardier’s operational testing of the watercraft. Price stated that entrapment of a person’s foot was a consideration during testing.
The court held that the entrapment caused by the high footwell was the sole and proximate cause of Mr. Krummel’s injury. The court then made two important legal conclusions. First it determined that the 11-inch footwells did not render the product defective in design under the Restatement (Third) of Product Liability § 2(b) and the Louisiana Products Liability Act (“LPLA”) La.Rev.Stat. Ann. § 9:2800.56. Second, the court held Bombardier hable for failing to warn Krummel regarding the risks posed by the height of the footwell. The court determined liability under both the Restatement (Third) of Products Liability § 2(c) and the LPLA La.Rev.Stat. Ann. § 9:2800.57(A).
STANDARD OF REVIEW
In admiralty cases tried by the district court without a jury, we review the district court’s legal conclusions de novo and its factual findings for clear error. Sabah Shipyard SDN. BHD. v. M/V Harbel Tapper, 178 F.3d 400, 404 (5th Cir.1999).
DISCUSSION
Under the LPLA, a product is unreasonably dangerous because of an inadequate warning, “if, at the time the product left its manufacturer’s control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.” La.Rev.Stat. Ann. § 9:2800.57(A). Courts applying the LPLA have noted that even when a product is not defective, a manufacturer may have a duty to instruct reasonably foreseeable users of the product’s safe use. “A manufacturer must anticipate foreseeable misuse and also consider the particular hazard. When a product presents a serious risk of harm, the manufacturer must warn in a manner likely to catch the user’s attention.” Delery v. Prudential Ins. Co. of Am., 643 So.2d 807, 813-814 (La.App. 4th Cir.1994) quoting Easton v. Chevron Industries, Inc., 602 So.2d 1032 (La.App. 4th Cir.1992).
Based on the evidence presented at trial, the district court concluded that under the LPLA the watercraft was unreasonably dangerous because Bombardier provided no warnings regarding the risk of foot entrapment. The court said this failure to warn amounted to a lack of reasonable care by Bombardier. Therefore, the watercraft was dangerous to an extent beyond that which an ordinary user would have or should have contemplated.
We find that the district court erred in articulating the proper legal standard under the LPLA. State and federal courts applying the LPLA have established a detailed analysis for determining liability in both design defect and failure to warn cases. See, e.g., McCarthy v. Danek Medical, Inc., 65 F.Supp.2d 410, 412 (E.D.La.1999) (“Louisiana law does not allow a fact finder to presume an unreasonably dangerous design solely from the fact that injury occurred.”) In both defective design and failure to warn cases courts have applied a risk-utility analysis to determine liability. A court must first determine what risk, if any, the product created. A court must then determine whether a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. Bernard v. Ferrellgas, 689 So.2d 554, 560-61 (La.App. 3rd Cir.1997) (applying risk-utility analysis to La.Rev.Stat. Ann. § 9:2800.56 (design defect) and § 9:2800.57). In applying the risk-utility analysis, we have said that a plaintiff must show evidence “concerning the frequency of accidents like his own, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of his proposed alternative de *552 sign.” Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167, 183 (5th Cir.1990) (applying the risk-utility analysis to a design defect claim under La.Rev. Stat. Ann. § 9:2800.56).[4]
In this case, the district court found liability based solely on the fact that an injury occurred but did not properly apply the risk-utility analysis. The court heard no expert testimony regarding the risk the product created. Dr. Jacobson testified regarding forces necessary for bone fractures, not the quantum of risk inherent in the watercraft design. Moreover, other than Ms. Lester’s two accidents, Krummel provided no evidence as to the frequency of such accidents. Price testified that Bombardier considered foot entrapment when designing the footwells; however, such consideration does not amount to a showing that Bombardier used unreasonable care. Even if Bombardier kept poor accident records, Krummel must provide evidence regarding the frequency of the accidents. Without evidence showing the severity of the risk created by the foot-wells or the frequency of foot entrapment, it cannot be shown Bombardier failed to use reasonable care. Therefore, Bombardier cannot be held liable for failure to warn under the LPLA.
The Restatement (Third) of Products Liability § 2(c) requires a similar risk-utility analysis. This provision says: “A product is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller.... ” Applying the Restatement, the district court determined that Robert Krummel could have reduced his chance of injury if Bombardier had warned him regarding the risk of foot entrapment.
The district court again erred in applying the proper legal standard. Like the LPLA, the Restatement requires more extensive evidence in order to find liability. The comments to the Restatement (Third) of Product Liability § 2 note that in design defect cases and inadequate warning cases “some sort of independent assessment of advantages and disadvantages, to which some attach the label ‘risk-utility balancing,’ is necessary.” See id. at cmt. a. See also Whitted v. General Motors Corp., 58 F.3d 1200, 1206-7 (7th Cir.1995) (finding that for liability for failure to warn under Indiana product liability law and citing to then-proposed Restatement (Third) of Products Liability § 2(c) a plaintiff must present evidence, via statistics or other means, to illustrate that there is a possibility the product may cause injury). The district court again failed to apply the risk-utility analysis. In this case, the evidence showed an injury occurred because of foot entrapment, but no evidence shed light on whether Bombardier should have foreseen — either by a pattern of similar accidents or a design defect — the probability and risk of such an injury. Because the district court failed to make this inquiry, we find Bombardier did not have a duty to warn under the Third Restatement of Products Liability § 2(c).
CONCLUSION
For these reasons, we reverse and render judgment for Appellants.
REVERSED and RENDERED.

. The Appellees pled causes of action only under the Louisiana Products Liability Act and the Restatement (Third) of Products Liability.

. We reiterate that he could have removed his foot from the footwell. Although the district court refers to foot entrapment, the record clearly shows that the injury occurred because Krummel intentionally buried his foot in the well, and not because his foot was entrapped.

. A plaintiff may not need to detail and to quantify the risk and utility of a product where the product or the design feature in question is "relatively uncomplicated and 'must be such that a layman could readily grasp them.' ’’ Lavespere, 910 F.2d at 184. In this case, the district court heard testimony that footwell height and width impacted many aspects of the watercraft, including ease of entry and exit, steering, support for the body, comfort, and buoyancy. This being so, a layperson obviously could not have grasped the adequacy of the footwell design and the need, if any, for warnings.