**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CURTIS OSWALT; FEDERAL
INSURANCE COMPANY,
　　　　　*Plaintiffs-Appellees,*

　　　　　v.

RESOLUTE INDUSTRIES, INC.,
　　*Defendant-third-party-plaintiff-*
　　　　　　　　*Appellant,*

　　　　　v.

WEBASTO PRODUCTS NA, INC.,
　　*Third-party-defendant-Appellee.*

No. 10-35313

D.C. No.
2:08-cv-01600-MJP

OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted
January 12, 2011—Seattle, Washington

Filed June 16, 2011

Before: Susan P. Graber, Raymond C. Fisher and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Fisher

8189

## COUNSEL

Dennis Moran (argued) and William A. Keller, Moran Windes & Wong, PLLC, Seattle, Washington, for the defendant-third-party-plaintiff-appellant.

Anthony J. Gaspich (argued) and Russell R. Williams, Gaspich & Williams PLLC, Seattle, Washington, for the plaintiffs-appellees.

Troy D. Greenfield, Deborah L. Carstens, Erica A. Krikorian and Jerret E. Sale (argued), Bullivant Houser Bailey PC, Seattle, Washington, for third-party-defendant-appellee.

## OPINION

FISHER, Circuit Judge:

In this admiralty case, Resolute Industries, Inc., appeals an adverse summary judgment on its products liability claims against Webasto Products NA, Inc., the manufacturer of a heater that caught fire on Curtis Oswalt's boat during repairs performed by Resolute's employee. Resolute also challenges a judgment in Oswalt's favor on his claim against Resolute for breach of the implied warranty of workmanlike performance. We must decide whether the district court correctly rejected Resolute's products liability claims, correctly found Resolute liable to Oswalt and properly awarded Oswalt and his insurer damages for surveyor's fees and for the loss of use of the boat during repairs.

### BACKGROUND

In September 2006, Oswalt smelled burning coolant coming from the heater on his boat, the M/V CHUG, which was docked at a marina in Anacortes, Washington. Oswalt asked Jeff Albrecht, the general manager of a local repair shop, to fix the heater. When Albrecht arrived to begin the scheduled repair, he noticed that the heater, a diesel-powered model that uses electricity to control the fuel flow, was cold. Albrecht had been told by Oswalt that the circuit breaker labeled "boat heat" controlled power to the heater, so he flipped that breaker and began the repair.

Albrecht opened the heater's cover to remove the burner unit, a component ordinarily contained by a cylindrical canis-

ter inside the heater. When the heater is running, the end of the burner unit emits "a very intense flame, similar to a blowtorch," although there was no flame at the time Albrecht opened the cover. Albrecht removed the burner unit and set it on end on a shelf very close to the boat's overhead, or ceiling. Then his cell phone rang. It was the repair shop, asking Albrecht to move another boat in the marina. Albrecht left the CHUG, moved the other boat and returned 30 minutes later to the sight of smoke pouring from the stern of the CHUG, which had caught fire while he was away.

The parties agree that the burner unit was the source of the fire. It is also undisputed that the burner unit cannot turn on and emit a flame unless there is electricity flowing to the unit. Thus, although the means by which electricity reached the unit remain unknown, it is clear that Albrecht's flipping the circuit breaker did not cut the power.

Oswalt and his insurer, Federal Insurance Company, sued Albrecht's employer, Resolute, for negligence and breach of contract, including breach of the implied warranty of workmanlike performance. Resolute filed a third-party complaint against the heater's manufacturer, Webasto, alleging the fire was caused by the heater's inadequate warnings and instructions and its defective design. The district court granted summary judgment to Webasto on Resolute's products liability claims. Then, after a two-day bench trial, the court held that Resolute had breached the implied warranty when Albrecht moved the burner unit "to a position where it was certain to start a fire if it turned on" without first ensuring the heater's power was disconnected. The court awarded more than $200,000 in damages to Oswalt, including $4110 for hotel expenses Oswalt incurred while the boat was being repaired and $12,495 in fees Federal paid to its damage surveyor.

On appeal, Resolute challenges the adverse summary judgment on its products liability claims, the adverse liability verdict on Oswalt's implied warranty claim and the damages

awarded for hotel expenses and surveyor's fees. We have jurisdiction under 28 U.S.C. § 1291. We conclude that the district court properly granted summary judgment to Webasto on Resolute's inadequate warnings claim but erroneously granted summary judgment to Webasto on Resolute's design defect claim. Resolute raised a genuine issue of material fact as to whether Webasto's failure to include an automatic current shutoff device made the heater's design defective. We hold, however, that the district court properly held Resolute liable on Oswalt's implied warranty claim and properly awarded damages for surveyor's fees and for loss of use of the CHUG. We accordingly affirm in part and vacate in part the judgment of the district court and remand for further proceedings on Resolute's design defect claim.

## STANDARD OF Review

We review de novo the district court's grant of summary judgment. *See Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 832 (9th Cir. 2002). "We determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.*

Findings of fact made after a bench trial are reviewed for clear error, and conclusions of law are reviewed de novo. *See Havens v. F/T Polar Mist*, 996 F.2d 215, 217 (9th Cir. 1993). We review de novo the legal conclusion that damages are available and review for clear error factual findings underlying the damages award. *See Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1350 (9th Cir. 1987).

## DISCUSSION

### I.   Products Liability Claims

**[1]** Resolute's products liability claims against Webasto are controlled by the federal common law of maritime torts,

which is informed by the American Law Institute's Restatement of Torts. *See Pan-Alaska Fisheries, Inc. v. Marine Constr. & Design Co.*, 565 F.2d 1129, 1134 (9th Cir. 1977). We have previously adopted Section 402-A of the Restatement (Second) of Torts as the law of products liability in admiralty cases. *See id.* at 1134-35; *see also Saratoga Fishing Co. v. Marco Seattle Inc.*, 69 F.3d 1432, 1437-38 (9th Cir. 1995), *rev'd on other grounds sub nom. Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875 (1997). In *Saratoga Fishing*, we also relied on a preliminary version of the Products Liability Section of the Restatement (Third) of Torts, although we declined at that time to adopt that early draft as controlling. *See Saratoga Fishing*, 69 F.3d at 1441 (citing Restatement (Third) of Torts: Products Liability § 2, Tentative Draft No. 1, 1994)).

**[2]** Since the Restatement (Third) was finalized in 1998, however, we and other circuits have relied on it. *See St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1190 n.18 (11th Cir. 2009); *Krummel v. Bombardier Corp.*, 206 F.3d 548, 552 (5th Cir. 2000); *All Alaskan Seafoods, Inc. v. Raychem Corp.*, 197 F.3d 992, 995 (9th Cir. 1999). We agree with the parties that we should look to the Restatement (Third) of Torts: Products Liability to guide our assessment of Resolute's products liability claims, and we therefore apply its principles below.[1] *See* Restatement (Third) of Torts: Products Liability § 2 (1998) (hereinafter Restatement) (defining

---

[1]Judge Fisher acknowledges that his former co-clerk, Professor Gary T. Schwartz, a distinguished professor of tort law at UCLA School of Law until his untimely death, served as an adviser to the American Law Institute on the Products Liability Restatement. *See* American Law Institute, Restatements of the Law – Torts – Torts: Products Liability, http://www.ali.org/index.cfm?fuseaction=publications.ppage&node_id=54 (last visited May 20, 2011); Richard H. McAdams & Thomas S. Ulen, *Tribute to Gary T. Schwartz*, 2002 U. Ill. L. Rev. 789, 789 (2002).

categories of product defects, including design defects and defects due to inadequate instructions and warnings).[2]

## A.    Inadequate Warnings Claim

Resolute contends that the warnings on the heater and the instructions in its user's manual were inadequate to inform the user of the proper means of disconnecting power to the unit before repair. In granting summary judgment to Webasto on this claim, the district court first concluded that the instructions were irrelevant because Albrecht had never read them. The parties agree that if Albrecht read the instructions, he read them at a Webasto training session conducted by Sure Marine, a heater supply company. The district court found, however, that Webasto had "establish[ed] as a fact beyond dispute that Albrecht could not have attended a Webasto training prior to the fire aboard the boat," thereby proving Albrecht had not reviewed the user's manual and instructions at the time of the repair. It also reasoned that "[e]ven assuming *arguendo* that Albrecht had read the Webasto manual and the adequacy of its warnings was in issue," Resolute presented insufficient evidence of the instructions' inadequacy to raise a fact question for trial. We reject the first of the district court's reasons for granting summary judgment, but conclude its alternative holding was proper.

## 1.    Relevance of Warnings and Instructions

[3] The district court erred in concluding that there was no genuine issue of material fact as to whether Albrecht attended a Webasto training before the fire. In his declaration, Albrecht insisted that he was "certain" he attended a class training him on the Webasto heater system "prior to the fire aboard the CHUG[ ] in October 2006." In support, Resolute submitted

---

[2]Because the parties agree that the Restatement (Third) controls here, we decline to decide whether its principles presumptively govern in every case.

illegible timesheets purporting to demonstrate Albrecht attended a training session on September 26, 2006, six days before the fire on October 2. Webasto countered with a declaration from the president of Sure Marine, stating that Sure Marine's only 2006 Webasto training took place on October 18, 2006, well after the fire. The Sure Marine declaration was accompanied by a class roster showing that Albrecht was at an October 18 training class, although it did not prove that no additional classes were held earlier in the year.

**[4]** Neither party's evidence established — beyond the declarants' conflicting assertions — whether Albrecht attended a training before the fire. The district court chose to credit the Sure Marine declaration, however, dismissing Albrecht's contrary declaration as unsubstantiated. In accepting one account over the other, the court improperly resolved an evidentiary conflict at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (explaining that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are inappropriate at the summary judgment stage).

## 2.    Adequacy of Warnings and Instructions

We nonetheless hold that the district court properly granted summary judgment to Webasto because Resolute failed to establish a genuine issue that the heater's warnings and instructions were inadequate.

**[5]** Resolute contends the warnings and instructions improperly left to the repair technician, Albrecht, the method of disconnecting power to the burner unit. We disagree. A product "is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings . . . and the omission of the instructions or warnings renders the product not reasonably safe." Restatement § 2(c). In general, however, "a prod-

uct seller is not subject to liability for failing to warn or instruct regarding risks and risk-avoidance measures that should be obvious to, or generally known by, foreseeable product users." *Id.* § 2 cmt. j.

**[6]** In this case, the risk that failure to disconnect the power could cause a fire should have been obvious to Albrecht, an experienced technician who undertook to repair a flame-emitting burner unit in the confined space of a boat where fire is a generally known risk. Indeed, Albrecht himself admitted in his deposition that "kill the power" is an elementary rule for "working on a piece of equipment powered by electricity." Moreover, a warning on the outside of the burner unit advised the user to "[d]isconnect the current before opening," confirming what Albrecht acknowledged was a basic precautionary principle. Thus, even if Webasto was required to inform Albrecht he needed to "kill the power" before beginning the repair, Webasto provided such a warning.

**[7]** Resolute nonetheless argues that Webasto failed to advise Albrecht of the proper mechanism for disconnecting the power. But if Albrecht, an experienced technician, was unsure how to go about disconnecting the power, he could have looked to the heater's repair manual, which included the following instruction:

> 6.3 Removing the burner unit
>
> Replacement of certain components in the combustion unit is made easier if the burner unit is first removed and placed on a bench.
>
> 1. Remove the cover on the thermostats, and pull out the connection for the overheat fuse[ ], control thermostat [ ] and temperature limiter [ ], unscrew the clamp [ ] and lift up the connectors.

2. Remove block connectors A and B from the control unit and disconnect the fuel lines from the heater connection pipes. Plug the pipes.

3. Loosen two eye bolt nuts [ ], swing out, remove the hinge pin[ ] and lift off the burner unit.

Removal of the block connectors from the control unit, as directed in paragraph 2, disconnects power to the unit. Thus, read together with the warning on the outside of the burner unit, the manual advised Albrecht to disconnect the power before removing the burner unit, and provided for disconnection of the power, through removal of the block connectors, in the process of removing the burner unit.

Resolute argues that its expert, Paul Way, raised a triable issue as to the instructions' adequacy. Way read instruction 6.3 as applying only when the burner unit was removed from the boat entirely, and opined that the instructions should have directed the user to "disconnect the power cord from the unit . . . in all cases," not just when the burner unit was removed from the boat. Even were we to assume Way's restrictive interpretation of instruction 6.3 was reasonable, however, it does not negate the fact that the instruction showed Albrecht how to be sure the power source was disconnected, by removing the block connectors.

Way also testified that "the later version of the instruction repair manual [instruction 6.3] . . . added the statement that, with a big bold warning, 'this is a dangerous situation,' " suggesting that, "to avoid an unsafe condition," a similar safety warning should have been included in the earlier version of the manual that was available to Albrecht. It is true that instruction 6.3 initially was framed as a way to replace burner unit components more easily, not as an explicit safety warning. But, as we have explained, the safety implications of disconnecting the power to the burner unit should have been obvious to Albrecht, especially when he left the connected

burner unit lying close to and pointed toward the flammable cabin ceiling. In this context, the absence of a "big bold warning" was not unreasonable. *See* Restatement § 2 cmt. j.

**[8]** For these reasons, we affirm the summary judgment on Resolute's inadequate warnings claim.

## B.  Design Defect Claim

Resolute also contends the heater was defectively designed because it "should have been equipped with an automatic current shutoff like all home furnaces are equipped with." The district court rejected this claim for three reasons: (1) the proposed alternative design "is not based on any industry regulations or standards"; (2) Resolute presented no evidence "that any other marine heater manufacturer includes such a [shutoff] device on their products"; and (3) Resolute presented no evidence that the proposed shutoff device would have been simple and cheap to implement. We find the first two observations inadequate to justify granting summary judgment, and we disagree with the third.

**[9]** Compliance with applicable safety standards does not insulate a manufacturer from defective product claims. *See Saratoga Fishing*, 69 F.3d at 1441-42 (affirming the district court's conclusion that "although . . . [the manufacturers'] failure to use [the proposed alternative design] at the time of construction did not violate any industry rules or standards . . . the design [was] unreasonably dangerous and defective because the design included a high risk of danger and there was a feasible alternative"). Furthermore, even though "it may be difficult for the plaintiff to prove that an alternative design could have been practically adopted" when the defendant's product is "the safest in use at the time of sale," this fact is not necessarily dispositive. Restatement § 2 cmt. d. If it were, there could be no first case demanding improvement of an unsafe (but widely accepted) product design.

**[10]** Finally, we do not agree with the district court that Resolute failed to present any proof that its proposed alternative design would be simple and cheap to implement. Way opined that the heater should have been designed with a "built-in safety switch to automatically disconnect power to the heater in the same manner as is commonly used in home furnaces." He stated that this design modification would have been simple to implement, because "[i]n the Webasto case there were two components that could be disassembled, and there was a very easy place to mount either a wire coupling or a safety switch so that if the burner head were removed, it would automatically and positively disconnect power." Way's description of the simplicity of the proposed design modification, together with the evidence that similar safety features are routinely included in home heaters, sufficed to raise a genuine issue of material fact. *See* Restatement § 2 cmt. d ("If the plaintiff introduces expert testimony to establish that a reasonable alternative design could practically have been adopted, a trier of fact may conclude that the product was defective notwithstanding that such a design was not adopted by any manufacturer, or even considered for commercial use, at the time of sale.").

We therefore vacate summary judgment on the design defect claim.[3]

## II.   Resolute's Liability to Oswalt

**[11]** Resolute disputes its liability for breach of the implied warranty of workmanlike performance, arguing that, because there was no "affirmative admissible proof of a causal link"

---

[3]The district court did not consider Webasto's argument — raised only in its reply brief — that Way's testimony was inadmissible because he was not a properly qualified expert under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). We therefore decline to address the issue here. On remand, the district court may, if appropriate, address the sufficiency of Way's qualifications in the first instance.

between Albrecht's actions and the fire, the district court clearly erred by finding that Albrecht caused the fire. We reject this argument, however, because there was ample circumstantial evidence to support the causation finding. Albrecht himself admitted that many boats are miswired, perhaps explaining why flipping the breaker did not actually cut the power to the heater. Moreover, the parties agree that the burner unit was the source of the fire and that it could have ignited only if there was power flowing to the heater. This circumstantial evidence supports the district court's finding that Albrecht's failure to disconnect the power allowed electricity to flow to the heater, causing the unattended burner unit to ignite. *See United States v. Standard Oil Co. of Cal.*, 495 F.2d 911, 916 (9th Cir. 1974) (affirming a finding that a boat caused an oil fire based on "substantial circumstantial evidence").

### III.   Loss of Use Damages

Resolute argues the district court erred in awarding Oswalt damages for hotel charges he incurred while the fire damage to the CHUG was being repaired. The parties do not dispute the relevant facts, which the district court found as follows:

> At the time of the loss, Curtis Oswalt worked as a flight attendant for Southwest Airlines. His work assignments started and ended in Oakland, and he had to pay for hotels in Oakland at his own expense before and after each flight. To save this cost, he used the CHUG as a second home when working in Oakland, California in the winter months. When the loss occurred, the M/V CHUG was being readied to take to Oakland for the winter. Unable to use the CHUG as his residence, Curtis Oswalt incurred hotel expenses.

Citing *The Conqueror*, 166 U.S. 110 (1897), Resolute contends that "[l]oss of use damages are not recoverable for a

pleasure craft" and that Oswalt therefore cannot recover hotel fees he incurred when unable to use the CHUG, a "pleasure yacht," as a second home.

**[12]** *The Conqueror* held that a wronged boat owner seeking recovery for loss of use of his boat must show "a pecuniary loss, or at least a reasonable certainty of pecuniary loss, and not a mere inconvenience arising from an inability to use the vessel for the purposes of pleasure." 166 U.S. at 133. It therefore rejected a claim for damages for loss of use of a yacht that was "designed for pleasure only, and [had] never been put to any other use." *Id.* at 112. This conclusion flowed from the Court's concern that the value of the lost recreational use claimed in that case, which was based on unsupported witness testimony, was "too uncertain and conjectural to form a proper basis for estimation" of damages due. *Id.* at 127. We later interpreted *The Conqueror* as establishing that, "[u]nder federal maritime law loss of use of a private pleasure boat is not a compensable item of damages." *Oppen v. Aetna Ins. Co.*, 485 F.2d 252, 257 (9th Cir. 1973) (citing *The Conqueror*, 166 U.S. 110).[4]

**[13]** In this case, however, Oswalt sought to recover not for lost recreational use of his boat, as was the case in *The Conqueror* and *Oppen*, but for deprivation of the use of the CHUG to defray his work-related expenses. The loss of use

---

[4]This general rule against compensation for loss of use of a private pleasure boat has been questioned both as a matter of tort law and as a matter of basic fairness. *See Brooklyn E. Dist. Terminal v. United States*, 287 U.S. 170, 175 (1932) (sharply criticizing this rule in dicta); *N. Assurance Co. of Am. v. Heard*, 755 F. Supp. 2d 295, at *4-5 (D. Mass. 2010) (questioning the wisdom of a rule that "results in similarly situated plaintiffs and defendants facing vastly different outcomes depending not on monetizable damages but on the character of the loss"). Regardless, although we are bound to apply *Oppen*, we find it readily distinguishable, as explained in text. In *Oppen*, we had no occasion to decide whether a plaintiff may recover for loss of use of a private pleasure boat that is also used for business-related purposes.

damages awarded to Oswalt are both business-related and entirely nonspeculative; as the district court observed, the hotel charges Oswalt incurred are supported by "extensive, uncontroverted documentation." We have never denied loss of use damages under such circumstances. *Cf. Oppen*, 485 F.2d at 257 (disallowing damages for interference with the plaintiffs' recreational use of their "private pleasure boat[s]" in the Santa Barbara Channel).

[14] The district court therefore correctly allowed Oswalt to recover hotel charges incurred while the CHUG was being repaired.

## IV. Surveyor's Fees

[15] The district court also properly allowed Federal Insurance Company to recover the fees of the surveyor who assessed the fire damage to the CHUG. Even if Resolute is correct that Chubb, Federal's parent corporation, "was the corporation that [chose] and sent out the surveyor," the district court did not clearly err in finding that it was Federal that paid the surveyor's fees and should be compensated for them. Nor does it matter that the surveyor's fees were not included within the amount reflected on the subrogation receipt. In the receipt, Oswalt subrogated to Federal "all of [his] rights, claims and interest" for the loss discovered on the day of the fire. Federal was therefore entitled to recover sums Oswalt himself could properly have claimed, and Resolute does not dispute that Oswalt would have been entitled to recover surveyor's fees. Finally, it is irrelevant for damages purposes that the district court earlier declined to penalize Federal when a Chubb employee failed to respond to Resolute's Rule 30(b)(6) deposition notice. Resolute cites no authority for the proposition that the proper remedy for this alleged discovery grievance was to curtail the damages award. We therefore uphold the award of damages for surveyor's fees.

**CONCLUSION**

We hold that the district court properly granted summary judgment to Webasto on Resolute's inadequate warnings claim, but erroneously granted summary judgment on the design defect claim. We further conclude that the court properly held Resolute liable on Oswalt's implied warranty claim and properly awarded damages for loss of use and surveyor's fees. Accordingly, we affirm in part and vacate in part the judgment of the district court and remand for further proceedings on Resolute's design defect claim. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, VACATED IN PART, REMANDED.**