**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 26 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WESTERN NATIONAL ASSURANCE
COMPANY, a Minnesota corporation,

        Plaintiff-counter-
        defendant-Appellee,

    v.

SALLY WIPF, Personal
Representative/Administrator of the Estate
of Michael A. Erb,

        Defendant,

 and

ROBERT WARGACKI, Substitute
Administrator estate of Michael A Erb
personal representative of Anne-Marie
Wargacki estate of Anne-Marie Wargacki,

        Defendant-counter-claimant-
        Appellant.

No.    15-35071

D.C. No. 3:13-cv-05373- RBL

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

---

     [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted July 13, 2017
Seattle, Washington

Before:     TASHIMA, McKEOWN, and NGUYEN, Circuit Judges.

In June 2010, Michael Erb shot Anne-Marie Wargacki, his pregnant girlfriend, immediately killing both her and her unborn child.  Moments later, Erb shot himself in the head.  The police concluded it was a murder-suicide.  Three months later, Wargacki's Estate filed a wrongful death lawsuit against Erb's Estate.[1]  After Erb's Estate conceded liability, a jury awarded Wargacki's Estate more than $7 million in damages.

During the pendency of the wrongful death suit, Erb's Estate contacted Appellee Western National Assurance Co. ("Western") to obtain a copy of Erb's homeowner's insurance policy.  In two letters to Western, Erb's Estate recounted the facts of the shooting, requested a copy of the policy, and sought a coverage determination.  In January 2011, after obtaining a copy of the wrongful death complaint, Western denied coverage.

Ten months after entry of judgment – and more than two years after Western denied coverage – Wargacki's Estate sent a letter to Western demanding payment

---

[1]  Robert Wargacki ("Wargacki"), now acting as administrator of both the Wargacki and Erb Estates, is here the Appellant.

2

of the $7 million judgment.  In response, Western initiated this action for declaratory relief that Erb's homeowner's policy does not cover any liability arising out of the shooting.  Wargacki then filed a counterclaim for bad faith insurance practices.

Western filed a motion for summary judgment as to its duty to indemnify.  The district court granted the motion.  Thereafter, the parties filed cross-motions for summary judgment as to Western's duty to defend and whether its refusal to defend amounted to bad faith.  After concluding that Western did not owe a duty to defend under the policy, the court granted Western's motion and denied Wargacki's.

Wargacki now appeals the district court's two summary judgment orders.  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

We review de novo the district court's grants of summary judgment.  *See Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 859 (9th Cir. 2011) (citation omitted).  Viewing the evidence in the light most favorable to the nonmoving party, we must determine "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law."  *Id.* (citation omitted).

**1.** Under Washington law, Western's duty to indemnify turns on whether, on a full evidentiary record, Erb is *actually liable* to the claimant and that this liability is *actually covered* under the policy. *See Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1171 (Wash. 2000). Here, the undisputed facts – i.e., that Erb took a loaded gun, pointed it at Wargacki's head at close range, and pulled the trigger – confirm that he was, at a minimum, criminally negligent. Western's policy unambiguously excludes from coverage injuries that result from Erb's "criminal acts."[2] Therefore, because Western had no duty to indemnify, the district court did not err in granting summary judgment to Western on the duty to indemnify claim.

**2.** In Washington, "[t]he duty to defend 'arises at the time an action is first brought, and is based on the potential for liability.'" *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007) (citation and emphasis omitted). "An insurer has a duty to defend when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured

---

[2] Wargacki urges us to adopt a "strict construction" of the policy's exclusion provision such that it would apply to criminal acts only if they are "expected, directed, or intentional." We decline to do so because such an interpretation is inconsistent with a plain reading of the provision's text and conflicts with our interpretation of similar language in other contexts. *See, e.g., Rose v. U.S. Postal Serv.*, 774 F.2d 1355, 1360 n.14 (9th Cir. 1984).

within the policy's coverage." *Id.* at 459 (internal quotation marks omitted).

Generally, "[t]he duty to defend . . . is determined from the 'eight corners' of the insurance contract and the underlying complaint." *Expedia, Inc. v. Steadfast Ins. Co.*, 329 P.3d 59, 64 (Wash. 2014).

To determine whether Western had a duty to defend, then, we begin with the complaint's factual allegations. To be sure, the facts alleged in the wrongful death complaint are sparse, consisting of a mere four paragraphs. Nevertheless, Wargacki contends the complaint alleged that Erb accidentally or negligently shot Wargacki, facts which, if proven, would not amount to a crime and therefore Western would have a duty to defend. Even if we accept Wargacki's premise that an accidental or negligent shooting does not necessarily trigger the "criminal acts" exclusion, *but see Allstate Ins. Co. v. Raynor*, 21 P.3d 707, 712 (Wash. 2001), his argument fails. Although the complaint uses the term "negligently," there are no facts alleged that support this version of events. And, problematically, there are several allegations – for example, that Erb's conduct went "far beyond the pale of human decency" and revealed a "callous disregard" for the safety of others – that are entirely inconsistent with an accidental shooting. *See Woo*, 164 P.3d at 459 (noting that the insurer's burden in a duty to defend case is "to determine if there

are *any facts* in the pleadings that could conceivably give rise to a duty to defend" (emphasis added) (citation omitted)).

Because even a liberal construction of the complaint puts the reader on notice that the shooting was criminal, Western's duty to defend was not implicated. Accordingly, the district court did not err in granting Western's motion for summary judgment on the duty to defend.

3.      Because we affirm the district court that Western did not have a duty to defend, it follows that we must likewise affirm the district court's denial of Wargacki's motion for summary judgment on his bad faith claim. *See Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998) ("Bad faith will not be found where a denial of coverage or a failure to provide a defense is based upon a reasonable interpretation of the insurance policy.").

**AFFIRMED.**