

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>FALL LINE TREE SERVICE, INC.,<br><br>Debtor. | BAP No. EC-22-1006-TLB<br>BAP No. EC-22-1007-TLB<br>(Related Appeals) |
| FALL LINE TREE SERVICE, INC.,<br><br>Appellant,<br>v.<br>DICK YOST YAGHLEGIAN; LAUREN<br>YAGHLEGIAN; DLSK FAMILY TRUST,<br>Dated June 2, 2008,<br><br>Appellees. | Bk. No. 2:20-bk-21548-CMK<br>Adv. No. 2:20-ap-02128-CMK<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Christopher M. Klein, Bankruptcy Judge, Presiding

Before: TAYLOR, LAFFERTY, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Debtor Fall Line Tree Service, Inc. appeals a bankruptcy court judgment awarded in its favor against Dick Yost Yaghlegian, Lauren Yaghlegian, and the DLSK Family Trust (jointly "the Yaghlegians") and the subsequent order denying its motion to alter or amend the judgment.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Because the oral findings by the bankruptcy court and the judgment conflict in two material respects and because the findings are insufficient in other material respects, we VACATE and REMAND.

## FACTS[1]

Debtor owns and operates a retail sporting goods business located in South Lake Tahoe known as "The Village Board Shop." The Yaghlegians sold the business' assets ("Assets") to Debtor in a seller-financed transaction. The Asset purchase price, including the inventory, was approximately $700,000. Debtor paid a down payment and executed two promissory notes for the remainder of the purchase price: the $386,849 "Inventory Note"; and the $270,000 "Purchase Price Note" (collectively, the "Notes"). The Notes both stated that they were secured by the Assets.

When Debtor was unable to pay the Notes, foreclosure threats followed. Debtor then filed a chapter 11[2] case electing treatment as a small business debtor under subchapter V. The Yaghlegians filed two proofs of claim in the bankruptcy case. Claim 4 evidenced the petition date balance

---

[1] We exercise our discretion to take judicial notice of documents electronically filed in the main case and the adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

on the Inventory Note ($246,246), and Claim 5 evidenced the petition date balance on the Purchase Price Note ($125,750) for a total $371,996.

Debtor was not content to reorganize and pay the Yaghlegians. It filed an adversary proceeding and generally alleged that the purchase price substantially exceeded the value of the Assets and that the Yaghlegians, through fraud, induced the Debtor's owners, Mr. and Mrs. Nichols, to agree to the price. Debtor, thus, asserted that the approximately $335,000 paid prepetition[3] was, at most, what the Assets were worth and, therefore, that the proofs of claim should be disallowed. The complaint contained nine claims for relief: (1) Avoidance of Unperfected Security Interest; (2) Declaratory Relief – Invalidity of Contract; (3) Avoidance and Recovery of Preferential Transfers; (4) Fraud; (5) Fraudulent Proof of Claim; (6) Disallowance of Claim – Proof of Claim No. 5; (7) Disallowance of Claim – Proof of Claim No. 4; (8) Fraudulent, Unlawful and Unfair Business Practices; and (9) Breach of Contract. After trial, Debtor successfully moved to add two more claims for relief for (10) promissory fraud and (11) fraud by way of concealment.

After trial, the bankruptcy court made oral findings of fact and conclusions of law. In summary, the bankruptcy court agreed that the Yaghlegians intentionally misled Mr. and Mrs. Nichols and awarded Debtor $123,324 in damages for fraud. The findings included a detailed

---

[3] Apparently, Debtor also paid about $55,000 in interest and other charges under the Notes before the petition date.

discussion of relevant case law but almost no discussion of the math supporting the damages award. In addition, the bankruptcy court found that the contract underlying the Purchase Price Note, was "made for the purpose of furthering [a] matter or thing prohibited by statute or to aid or assist any party therein" and was therefore "void as a matter of California law." Based on these rulings, the bankruptcy court determined that the Purchase Price Note was unenforceable. But the oral ruling left the Inventory Note fully payable, while also suggesting that it could be partially paid through offset of the fraud judgment. The bankruptcy court finally noted that "it's plainly admitted that there's no UCC-1 financing statement for either of those notes." ". . . . So judgment will ultimately be entered [avoiding] those unperfected security interests."

Thereafter the bankruptcy court entered its judgment stating:

> ORDERED, ADJUDGED, and DECREED that the plaintiff Fall Line Tree Service, Inc. shall recover of defendants . . . , the sum of $123,324.37 on counts 4, 10, and 11, which sum may be offset against Proofs of Claim Nos. 4 and 5.
> IT IS FURTHER ORDERED, ADJUDGED, and DECREED that all other claims for relief are DISMISSED.

The findings as to cancellation of the Purchase Price Note and the avoidance of the security interest in the Assets were not incorporated into the judgment.

Shortly after entry of the judgment, Debtor filed a motion asking the bankruptcy court to amend the judgment ("Motion to Amend"). Debtor

4

noted that the bankruptcy court's oral ruling was at odds with the judgment. It raised three points:

- First, the bankruptcy court orally determined that the Notes were unsecured, but the judgment dismissed count 1. As a result, the judgment left the Yaghlegians' claims secured;

- Second, the bankruptcy court orally determined that the Purchase Price Note was void and unenforceable, but the judgment dismissed counts 2 and 6. As a result, the judgment left the Purchase Price Note and Claim 5 fully payable; and

- Third, the judgment should have found that the Inventory Note was paid in full and that Claim 4 was disallowed.

The bankruptcy court denied the Motion to Amend with little commentary. Debtor appealed.[4] [5]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (K). We have jurisdiction under 28 U.S.C. § 158.

---

[4] The Yaghlegians also appealed the judgment but later requested dismissal, which was granted. Debtor cross-appealed, but by the time the Notice of Cross-Appeal was filed the original appeal had been dismissed, so the cross-appeal was treated as a new appeal.

[5] After the judgment was entered, Debtor levied on cash assets of the Yaghlegians and received payment in full of the judgment. The bankruptcy court denied the Yaghlegians' motion seeking return of those funds. Debtor's confirmed plan

## ISSUES

1.      Whether the bankruptcy court erred when it entered judgment dismissing Debtor's claim for relief (1): Avoidance of Unperfected Security Interest.

2.      Whether the bankruptcy court erred by dismissing Debtor's claims for relief (2) Declaratory Relief – Invalidity of Contract; and (6) Disallowance of Claim – Proof of Claim 5.

3.      Whether the bankruptcy court erred by incorrectly calculating fraud damages such that Debtor remains responsible for paying the Yaghlegians claims.

## STANDARDS OF REVIEW

"[W]e review the legal standards used in the calculation of damages de novo." *R.B. Matthews, Inc. v. Transamerica Transp. Servs.*, Inc., 945 F.2d 269, 272 (9th Cir. 1991) (citing *Galindo v. Stoody Co.*, 793 F.2d 1502, 1516 (9th Cir. 1986)); *see Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 859-60 (9th Cir. 2011) ("We review de novo the legal conclusion that damages are available and review for clear error factual findings underlying the damages award."). De novo review is independent and gives no deference to the trial court's conclusion. *Roth v. Educ. Credit Mgmt. Corp. (In re Roth)*, 490 B.R. 908, 915 (9th Cir. BAP 2013).

We review the bankruptcy court's findings of fact for clear error. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). A finding of fact

---

pays 51% of the Yaghlegians' claims.

is clearly erroneous if it is illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz),* 606 F.3d 1189, 1196 (9th Cir. 2010). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City,* 470 U.S. 564, 574 (1985).

## DISCUSSION

**A. The bankruptcy court erred when it entered judgment dismissing Claims for Relief (1), (2), and (6).**

### 1. Claim for relief (1) should not have been dismissed.

After trial, the bankruptcy court found that the Yaghlegians failed to perfect their alleged security interests and that their liens would be avoided under § 544. The judgment, however, neither avoided the unperfected security interests nor granted relief on the claim for relief so requesting. Instead, it left the obligations secured. The Yaghlegian's counsel conceded at oral argument that lien avoidance was the ruling and intention of the bankruptcy court. The parties jointly agreed that the Panel could simply modify the judgment to include this provision.

The Panel is authorized to modify a judgment under 28 U.S.C. § 2106 which provides "[a] court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review[.]" But because we vacate and remand for other reasons, we decline to so modify here. The bankruptcy court must do so on remand.

7

**2.    Claims for relief (2) and (6) should not have been dismissed.**

After trial, the bankruptcy court ruled that the Purchase Price Note related to a contract "made for the purpose of furthering [a] matter or thing prohibited by statute or to aid or assist any party therein" and was therefore "void as a matter of California law." The bankruptcy court commented that it would "generate judgment determining that the $270,000 promissory note is unenforceable."

The judgment, however, declared neither the Purchase Price Note nor Claim 5 unenforceable. Instead, it dismissed claims for relief (2) and (6), which sought disallowance of the Purchase Price Note. Thus, it left the Purchase Price Note and Claim 5 fully payable. The Yaghlegians' counsel conceded that disallowance of the Purchase Price Note and Claim 5 was the ruling and intention of the bankruptcy court.

Again, under 28 U.S.C. § 2106, we could modify the judgment. But, because we vacate and remand for other reasons, we decline to do so here. The bankruptcy court must do so on remand.

**B.    The bankruptcy court did not err when it found fraud, but we must remand for further findings as to its award of damages.**

Neither Debtor nor the Yaghlegians challenge the bankruptcy court's findings of fraud and we discern no error.

Rather, Debtor challenges the bankruptcy court's award of consequential damages, asserting that the amount of the award should

8

have been sufficient to offset at least the total amount of the two proofs of claim or $371,996, rather than the amount awarded of $123,324.37.

Debtor's argument is essentially mathematical. In its view, the bankruptcy court found that the value of the Assets was $225,000; it paid $335,000 pre-petition; thus, it was damaged in the amount of $110,000 plus out-of-pocket costs.[6] This leads inescapably, in Debtor's view, to the conclusion that it has paid the Yaghlegians in full.

But the bankruptcy court's findings are not as clear as suggested by Debtor. The findings neither precisely valued the Assets nor outlined the basis for the damages calculation. Numbers exist in the findings, but they do not unequivocally support Debtor's argument.

True, the bankruptcy court made a precise finding of fraud damages. It also stated that it calculated the award "with reference" to the out-of-pocket rule of California Civil Code § 3343, which relates to real property transactions, and "informs the analysis."[7] In addition, the bankruptcy court stated that "I am persuaded that the defendants were able to get a total

---

[6] The bankruptcy court awarded $13,324.37 in compensatory damages for interest Debtor paid to short-term hard-money lenders to make payments to the Yaghlegians.

[7] California Civil Code § 3343 states, in relevant part:

(a) One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction, including any of the following:

(1) Amounts actually and reasonably expended in reliance upon the fraud.

price from the – from the plaintiff that exceeded the fair market value of the business by perhaps $475,000." And it also noted that there were two relevant requests for admission that were deemed admitted: admission 14 that the purchase price of the business' retail product inventory exceeded its fair market value by at least $100,000; and admission 15 that the aggregate purchase price exceeded the fair market value of such assets by no less than $270,000. Thus, there are numbers in the findings, but nothing allows us to precisely track the bankruptcy court's calculations and damages analysis.

Further, the mathematical arguments advanced by Debtor only go so far. Even if its math establishes overpayment with precision, it is not clear from the findings whether the bankruptcy court determined that all the overpayment was the result of fraud as opposed to poor business judgment. The bankruptcy court found a precise amount of damages and discussed offset. These findings suggest a possible conclusion that Debtor's principals bear some responsibility for the overpayment. The record supports such a view, and if we had a finding so stating we would affirm – but we do not.

In the absence of complete findings, we may vacate a judgment and remand the case to the bankruptcy court to make the required findings. *See United States v. Ameline,* 409 F.3d 1073, 1081 (9th Cir. 2005) (en banc). A bankruptcy court's failure to make factual findings as required by Civil Rule 52(a), made applicable to this matter by Rule 7052, does not require

remand unless a full understanding of the issues under review is not possible without aid of the findings. *See Simeonoff v. Hiner*, 249 F.3d 883, 891 (9th Cir. 2001). Here, the findings must be supplemented before meaningful appellate review is possible, and remand for additional findings is required.

## CONCLUSION

Based on the foregoing, we VACATE and REMAND to permit the bankruptcy court to correct the judgment in regard to counts (1), (2), and (6), to issue additional findings, and to amend the judgment if appropriate given more complete findings.