**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

YADIRA CONTRERAS; ERICA
KRONECK; KYLE OLSON; HENDRY
"CODY" RODMAN, III,

        Plaintiffs-Appellants,

v.

HERITAGE UNIVERSITY,

        Defendant-Appellee.

No. 23-35340

D.C. No. 1:22-cv-03034-TOR

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted March 29, 2024
Seattle, Washington

Before:  W. FLETCHER, PARKER,[**] and MILLER, Circuit Judges.

Appellants are four former students of the physician assistant ("PA")

program at Heritage University, located in Toppenish, Washington.  They were

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Barrington D. Parker, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

members of "Cohort 6," the students admitted during the sixth year of the program. Heritage's PA program lost accreditation five months into appellants' two-year program. As a result, appellants were forced to relocate to PA programs at other schools, incurring expenses associated with moving and career delays. Appellants allege that they enrolled in Heritage's PA program in reliance on false statements by Heritage that a loss of accreditation would not adversely affect their education. Appellants brought federal and state law claims against Heritage, and the district court granted summary judgment for Heritage.

We have jurisdiction under 28 U.S.C. § 1291, and our review is de novo. *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 859 (9th Cir. 2011). We view the evidence in the light most favorable to the appellants, and affirm only if there are no genuine issues of material fact. *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 835 (9th Cir. 2002). We reverse and remand for further proceedings.

1. Washington Consumer Protection Act Claims

Washington's Consumer Protection Act ("CPA") is a consumer protection statute, but it applies only to acts that are "injurious to the public interest." Wash. Rev. Code § 19.86.920. When a CPA claim is based on an individual private contract instead of a common commercial transaction, "it may be more difficult to

show that the public has an interest in the subject matter." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 538 (1986).

"[I]t is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." *Id*. at 538. Relevant factors include: "(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?" *Id*. These factors need not all be present, but they are useful "indicia of an effect on public interest from which a trier of fact could reasonably find public interest impact." *Id*.

Here, the district court found that Heritage's allegedly deceptive statements were communications to individual appellants that did not adversely affect the public within the meaning of the CPA. The court found that appellants had failed to provide evidence that "all of Cohort 6 experienced the same alleged harm or that future cohorts are substantially likely to face the same alleged harm." We disagree.

The gravamen of appellants' claim is that Heritage consistently stated to prospective members of Cohort 6 that a loss of accreditation, if it occurred, would not adversely affect them. All four appellants provide evidence that they relied on

3

these statements when deciding to enroll in Heritage's PA program. Before enrolling, appellant Olson sent an email to Heritage asking how a loss of accreditation would affect him. University administrators responded, "Our probationary status will not have an impact on our students in any way[.] [T]hey will still be allowed to graduate and take the boards." Appellant Rodman also corresponded with Heritage before enrolling. He received multiple assurances that a loss of accreditation would not jeopardize his ability to complete the program. Appellants Contreras and Kronek were similarly assured during their in-person interviews.

Appellants provide sworn statements from six other members of Cohort 6. All six of them state that they asked about the consequences of a loss of accreditation, and that Heritage assured them in the same manner it assured the four appellants. Further, appellants provided evidence that Heritage gave misleading statements about its accreditation, and the consequences of a possible loss of accreditation, in a publicly available brochure and website. The record does not contain a single example of Heritage telling applicants that a loss of accreditation would adversely affect them by interrupting their education and forcing them to transfer to a different school.

An impact of this breadth is injurious to the public interest under the CPA. *Compare Burns v. McClinton*, 135 Wash.App. 285 (2006) (no public interest impact where attorney deceived just one client out of 200 and no indication deception would repeat) *with Bishop v. Jefferson Title Co.*, 28 P.3d 802, 812 (Wash. Ct. App. 2001) (public interest impact where company engaged in unauthorized practice of law misled two clients "by creating an appearance of competent use of appropriate legal forms," and where there was a threat to similarly situated members of the public).

Viewing the record in the light most favorable to the appellants, we hold that appellants have shown that Heritage's conduct affected the public interest within the meaning of the CPA.

2. Breach of Contract

The district court found "no genuine dispute that [appellants] agreed to the terms of the Student Handbook, and those terms included the risk of attending a program that could lose accreditation." This is true but not dispositive. Appellants do not claim that Heritage misled them about the possibility of the loss of accreditation. Rather, appellants' claim is that Heritage misled them about the consequences of such a loss. More specifically, appellants argue that, together with the Student Handbook—which encouraged students and applicants to pose

5

their accreditation questions to program officials—Heritage administrators made statements guaranteeing that students would suffer no negative consequences from the loss of accreditation. The record shows a genuine dispute as to whether it was reasonable for appellants to rely on Heritage's assurances that Cohort 6 would be able to finish—to "teach out"—the PA program at Heritage and take the appropriate board exams after a loss of accreditation.

*Inter alia*, on October 6, 2020, the day Heritage lost accreditation, Heritage's PA program director asked the accrediting agency whether it was possible to "teach out" members of Cohort 6 to graduation, and for those students' degrees to be recognized. The executive director of the agency replied the same day and said that this would not be allowed. Despite this response, the PA program director told students, in an email on November 3, 2020, that Cohort 6 would be "taught out" and would be eligible to take the national certification exam. A reasonable fact finder could conclude that the program director's email to students, in addition to the evidence recounted above, support a conclusion that Heritage contractually obligated itself to "teach out" members of Cohort 6 and later breached that contract.

3. Breach of Covenant of Good Faith and Fair Dealing

The district court concluded that appellants failed to identify a "specific contract obligation" that Heritage breached. However, as outlined above, appellants did identify such an obligation. Appellants contend, and provide evidence, that Heritage promised to provide a PA program that would allow them to complete their two years of instruction, obtain a degree, and take the appropriate boards even if the program lost accreditation. For the reasons explained above, the evidence, viewed in the light most favorable to appellants' claims, supports their cause of action.

4. Fraudulent and Negligent Misrepresentation

The district court held that appellants' claims of fraudulent and negligent misrepresentation failed because "any assurance regarding the teach out provision during [Appellants'] admission process was a promise of future performance and cannot form the basis for [Appellants's] claims." However, appellants' claims rest on statements that were not merely predictive but involved a description of current facts. Here, the relevant misrepresentation of an existing fact was that there was no risk that appellants would be unable to obtain their degrees and take the appropriate boards if Heritage lost accreditation. In this case, for purposes of summary judgment, there is sufficient evidence that Heritage knowingly made false statements and/or was negligent in communicating false information.

7

5.  Unjust Enrichment and Promissory Estoppel

The district court concluded that appellants' claims for unjust enrichment and promissory estoppel were precluded by its grant of summary judgment to Heritage on appellants' other contract-based claims.  Because we reverse on appellants' other claims, we vacate the district court's judgment on these claims to allow it to consider the merits in the first instance.

**REVERSED and REMANDED.**